No. 87,966

In the Matter of STAN R. SINGLETON, *Respondent*.

(41 P.3d 836)

Opinion filed March 8, 2002.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*G. Craig Robinson*, of Wichita, argued the cause for the respondent, and *Stan R. Singleton*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Stan R. Singleton, of Derby, an attorney admitted to the practice of law in Kansas.

Complaints filed against the respondent alleged that the respondent violated KRPC 1.3 (2001 Kan. Ct. R. Annot. 323) (diligence); KRPC 1.4 (2001 Kan. Ct. R. Annot. 334) (communication); KRPC 1.5 (2001 Kan. Ct. R. Annot. 345) (fees); and KRPC 1.15 (2001 Kan. Ct. R. Annot. 376) (safekeeping property).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The respondent appeared in person and through counsel, G. Craig Robinson, and the Disciplinary Administrator's office appeared by Frank D. Diehl, Deputy Disciplinary Administrator.

Based upon clear and convincing evidence, a unanimous hearing panel made the followings findings of facts and conclusions of law:

### "FINDINGS OF FACT

"1. Stan R. Singleton (hereinafter 'the Respondent') is an attorney at law. . . . His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Derby, Kansas . . . . The Respondent was admitted to the practice of law in the State of Kansas on September 14, 1978.

### "*Wilson Case: DA7659*

"2. The Respondent prepared a will for Henry Wilson in June, 1997. Thereafter, on August 5, 1997, Henry Wilson passed away. Henry Wilson was survived by four children: Guy Marc Wilson, Karen Beem, Debra Wilson, and Lori Hemsley. Pursuant to Henry Wilson's will, Guy Marc Wilson was to serve as Executor of the will.

"3. After Henry Wilson's passing, Guy Marc Wilson contacted the Respondent and requested that the Respondent represent him in probating Henry Wilson's will. The Respondent agreed.

"4. Although the Respondent obtained entries of appearances and waivers from Henry Wilson's daughters in March, 1998, the order admitting the will to probate was not filed until August, 1998. Additionally, because of the Respondent's delay in obtaining the order admitting the will to probate, Guy Marc Wilson did not have the authority to open a checking account, cash life insurance policies, and pay Henry Wilson's bills. The expenses from the funeral home remained unpaid for two years, resulting in an interest penalty to the estate in the amount of $1,189.42. The Respondent failed to file the Inheritance Tax Return, IH-90, until two years after Henry Wilson's death. As a result, interest in the amount of $56.37 accrued against the estate. Finally, Henry Wilson's personal property remained in storage for more than two years.

### "Sinn Case: DA7707

"5. In March, 1998, John L. Sinn was charged with two counts of rape. As a result of plea negotiations, Mr. Sinn entered a no contest plea to aggravated indecent liberties with a child. After being sentenced, Mr. Sinn became dissatisfied with the representation of his counsel. Through his mother, Mary Hahner, Mr. Sinn retained the Respondent. The Respondent was retained to file and prosecute a motion to modify sentence and an appeal.

"6. The Respondent filed and prosecuted a motion to modify sentence. After due consideration, the Court denied the motion. Thereafter, the Respondent filed a notice of appeal. It took the Respondent some amount of time to obtain the transcripts of the plea and sentencing hearings and the police reports. After the Respondent reviewed the transcripts and reports, the Respondent determined that an appeal would be futile. Accordingly, the Respondent allowed the appeal to be dismissed on the state's motion.

"7. The Respondent failed to discuss with Mr. Sinn his conclusion that an appeal would be futile. The Respondent failed to notify Mr. Sinn that the state had filed a motion to dismiss. Finally, the Respondent failed to inform Mr. Sinn that the appeal had been dismissed.

"8. The Respondent did communicate with Ms. Hahner in an office consultation. Ms. Hahner recorded this conversation and presumably relayed the recorded statement to Mr. Sinn. However, the Respondent failed to contact Mr. Sinn following the meeting with Ms. Hahner.

### "Stevens Case: DA7843

"9. During the summer months of 1998, Jennifer Stevens retained the Respondent to represent her in the Municipal Court of Wichita, Kansas, on a charge of driving under the influence of alcohol. In August, 1999, the Respondent entered his appearance.

"10. The case was resolved by plea and the matter was scheduled for sentencing. Prior to the sentencing, Ms. Stevens was required to appear for an interview for

the pre-sentence investigation. However, the letter the Respondent sent to Ms. Stevens was sent to an old address and she did not receive it. After Ms. Stevens learned that she had missed the appointment, the matter was rescheduled and she made herself available for the interview.

"11. Prior to sentencing, Ms. Stevens telephoned the Respondent's office. At that time, Ms. Stevens learned that the Respondent was ill. Ms. Stevens was informed that a continuance may be sought if the Respondent remained ill. However, Ms. Stevens had already made arrangements to be away from work and did not wish to continue the sentencing hearing.

"12. At the time of the sentencing hearing, January 19, 2000, the Respondent failed to appear due to illness. In his stead, the Respondent asked Jim Wilson to appear. Mr. Wilson did appear in behalf of the Respondent for Ms. Stevens.

"13. Throughout the representation, Ms. Stevens placed numerous telephone calls to the Respondent. The Respondent failed to return a number of her telephone calls.

### *"Durham Case: DA7871*

"14. On August 10, 1996, Bobbie Durham was injured in an automobile accident. Ms. Durham contacted the Respondent and hired him to represent her. The Respondent and Ms. Durham entered into a contingency fee agreement.

"15. The Respondent reached a settlement agreement to the satisfaction of Ms. Durham. In January, 1998, the Respondent received the settlement proceeds. The Respondent and Ms. Durham agreed to deposit $11,510.98 into the Respondent's trust account for payment of medical bills owed by Ms. Durham, associated with the automobile accident.

"16. Ms. Durham provided the Respondent with the medical bills that needed to be paid with the $11,510.98, that had been deposited in the Respondent's trust account. A dispute about the actual amount owed arose and, as a result, Columbia Wesley Medical filed suit. Eventually, the Respondent settled the collections case with Columbia Wesley Medical to Ms. Durham's satisfaction. As a result of the settlement, the Respondent forwarded $11,000, to counsel for Columbia Wesley Medical, from his trust account for the settlement on April 27, 2000.

"17. The Respondent failed to return Ms. Durham's telephone calls and failed to adequately inform Ms. Durham regarding the Columbia Wesley Medical law suit.

"18. The Respondent failed to inform Ms. Durham that she had the right to have the Respondent's fee reviewed.

"19. Between March 31, 1998, and March 31, 2000, the Respondent's trust account balance fell below $11,510.98 on at least thirteen occasions.

### "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1. KRPC 1.3 provides: '[a] lawyer shall act with reasonable diligence and promptness in representing a client.' *Id.* The Respondent failed to act with rea-

sonable diligence and promptness in representing the estate of Henry Wilson. As a result of the Respondent's lack of diligence, the order admitting Henry Wilson's will to probate was delayed by five months; Guy Marc Wilson could not open a checking account, cash life insurance policies, and pay Henry Wilson's bills; the estate incurred an interest penalty on the bill for the funeral home expenses in the amount of $1,189.42; the Inheritance Tax Return, IH-90 was not filed until two years after Henry Wilson's death resulting in an interest penalty of $56.37; and Henry Wilson's personal property was not distributed to his heirs for more than two years which caused the estate to incur storage fees. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"2. KRPC 1.4(a) provides:

'A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

*Id.* The Respondent failed to maintain adequate communication with Mr. Sinn, Ms. Stevens, and Ms. Durham. In DA7707, the Respondent failed to discuss with Mr. Sinn that an appeal would be futile. Additionally, the Respondent failed to notify Mr. Sinn that the state had filed a motion to dismiss. Finally, the Respondent failed to inform Mr. Sinn that the appeal had been dismissed. In DA7843, the Respondent failed to return telephone calls placed by Ms. Stevens. Additionally, the Respondent failed to keep Ms. Stevens adequately informed regarding her case. In the Durham Case (DA7871), the Respondent failed to return Ms. Durham's telephone calls and failed to adequately inform Ms. Durham regarding the Columbia Wesley Medical law suit. Because the Respondent failed to keep Mr. Sinn, Ms. Stevens, and Ms. Durham informed about the status of their cases, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"3. KRPC 1.5(d) provides:

'. . . A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, and the litigation and other expenses to be deducted from the recovery. All such expenses shall be deducted before the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the client's share and the amount and method of its determination. *The statement shall advise the client of the right to have the fee reviewed as provided in subsection (e).*'

*Id.* (emphasis added). In this case, the Respondent violated this rule by failing to advise Ms. Durham of her right to have the fee reviewed. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.5(d).

"4. KRPC 1.15(a) provides:

'A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of

Kansas. Other property shall be identified as such and appropriately safe-guarded. Complete·records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of representation.'

*Id.* After depositing Ms. Durham's funds into his trust account, and before the Respondent paid the settlement of the law suit brought by Columbia Wesley Medical, the balance in the Respondent's trust account fell below $11,510.98 on at least thirteen occasions. As such, the Hearing Panel concludes that the Respondent failed to safeguard Ms. Durham's funds, in violation of KRPC 1.15(a).

### "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to safeguard his client's property. Additionally, the Respondent violated his duty to his clients to provide diligent representation and adequate communication.

"*Mental State.* The Respondent negligently violated his duties to his clients.

"*Injury.* The estate of Henry Wilson suffered actual injury as a result of the Respondent's misconduct. Additionally, Mr. Sinn, Ms. Stevens, and Ms. Durham suffered potential injury.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Pattern of Misconduct. The Hearing Panel concludes that the Respondent engaged in a pattern of misconduct because the Respondent failed to adequately communicate with numerous clients over a period of time.

"Multiple Offenses. The Respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.5, and KRPC 1.15. As such, the Respondent engaged in multiple offenses.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas in 1978. At the time . . . the misconduct in these cases began, the Respondent had been practicing law for eighteen (18) years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time the misconduct occurred.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Absence of Dishonest or Selfish Motive. There was no evidence presented that the misconduct was the result of a dishonest or selfish motive.

"Personal or Emotional Problems. The Respondent testified that he has been estranged from his wife since April, 2000. Additionally, the Respondent testified that he has experienced marital discord for a number of years. The Respondent also testified that the problems that he has experienced in his marriage affected his ability to practice law. Finally, the Respondent testified that he is in the process of obtaining a divorce from his wife of twenty (20) years.

"Present and Past Attitude of Cooperation. The Respondent fully cooperated in the investigation and prosecution of the disciplinary matter.

"Previous Good Character and Reputation. The Respondent is an active and productive member of the bar in Derby, Kansas. He enjoys the respect of his clients and friends and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"Remorse. Clearly, at the hearing on this matter, the Respondent expressed genuine remorse for engaging in the misconduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following standards:

'Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.' Standard 4.13.

'Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.' Standard 4.43.

"The Hearing Panel unanimously recommends that imposition of discipline be suspended, and the Respondent be placed on probation for a period of twenty-four (24) months, commencing forthwith upon . . . terms and conditions [recommended by the panel]."

The court, having considered the record, the final hearing report, the factors in aggravation and mitigation, and the panel's recommendation, adopts and concurs in the findings, conclusions, and recommendation of the hearing panel. Based upon the respondent's violations of KRPC 1.3, KRPC 1.4, KRPC 1.5, and KRPC 1.15, the court finds that imposition of discipline should be suspended and respondent placed on probation with the conditions as follows.

The respondent appeared before us and requested the order not be published. After careful consideration of his argument, the court finds no justification to make an exception in this case.

IT IS THEREFORE ORDERED that imposition of sentence be suspended and that Stan R. Singleton be placed on probation for 24 months commencing effective the date of this opinion, upon the terms and conditions recommended by the hearing panel:

"1. *Supervision.* The Respondent shall be supervised by N. Trip Shawver, a duly licensed Kansas attorney. While serving as the Respondent's supervising attorney, Mr. Shawver shall act as an agent of the court and, accordingly, be afforded the immunities granted by Kan. Sup. Ct. R. 223. During the first six months of probation, Mr. Shawver shall meet with the Respondent on a bi-weekly basis. Thereafter, for the remainder of the probation, Mr. Shawver shall meet with the Respondent on a monthly basis. Mr. Shawver shall have access to the Respondent's client files, employees, and trust account. Mr. Shawver shall monitor whether the Respondent is diligently representing his clients, whether the Respondent is providing adequate communication with his clients, and whether the Respondent is advising his clients of their right to have his fee reviewed. The Respondent shall compensate Mr. Shawver for time expended in the supervision of the Respondent's probation.

"2. *Psychological Treatment.* The Respondent shall follow all recommendations of Dr. Moeller. The Respondent shall execute all necessary release forms, allowing Dr. Moeller to communicate with Mr. Shawver and the Disciplinary Administrator.

"3. *Professional Liability Insurance.* The Respondent shall maintain professional liability insurance. Within thirty days of the date of this report, the Respondent shall provide written verification of the professional liability insurance to the Disciplinary Administrator. Thereafter, for the duration of the probation, the Respondent shall provide written verification of the professional liability insurance on or before the renewal date to the Disciplinary Administrator.

"4. *Additional Violations.* The Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent shall immediately report such violation to the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action directing the Respondent to show cause why the probation should not be revoked.

"5. *Client File Audits.* Within thirty (30) days of the date of this report, Mr. Shawver shall conduct an initial audit of the Respondent's files. Thereafter, Mr. Shawver shall conduct audits of the Respondent's files as he deems appropriate. At the conclusion of the probation, Mr. Shawver shall complete a final audit of

the Respondent's files. After each audit, Mr. Shawver shall make a report regarding the audit. If Mr. Shawver discovers any violations of the Kansas Rules of Professional Conduct, Mr. Shawver shall include such information in his report. Mr. Shawver shall provide the Disciplinary Administrator and the Respondent with a copy of each audit report. The Respondent shall follow all recommendations and correct all deficiencies noted in Mr. Shawver's periodic audit reports.

"6. *Quarterly Reports*. Mr. Shawver shall report to the Disciplinary Administrator on a quarterly basis regarding: whether the Respondent is diligently representing his clients, whether the Respondent is providing adequate communication with his clients, whether the Respondent is advising his clients of their right to have his fee reviewed, whether the Respondent's trust account is being utilized appropriately, whether the Respondent is following the recommendations of Dr. Moeller, and whether the Respondent has engaged in additional violations of the Kansas Rules of Professional Conduct. Mr. Shawver shall immediately report any material deviation from proper practice to the Disciplinary Administrator.

"7. *Restitution*. The Respondent shall pay restitution in the amount of $1,245.79 to the estate of Henry Wilson within sixty (60) days of the date of this report.

"8. *Trust Account Audits*. Robert Straub, an auditor employed by the Disciplinary Administrator's office, shall conduct quarterly audits of the Respondent's trust account. The Respondent shall provide Mr. Straub with access to his trust account records to facilitate the quarterly audits. After each audit, Mr. Straub shall make a report of the audit, including information on whether the Respondent is properly safeguarding his client's property and whether the Respondent is appropriately utilizing his trust account. Mr. Straub shall provide the Disciplinary Administrator and the Respondent with a copy of each audit report. The Respondent shall follow all recommendations and correct all deficiencies noted in Mr. Straub's quarterly audit reports."

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to the respondent.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.